UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| UNITED STATES OF AMERICA,  ) | **INFORMATION** |
| ) | |
| Plaintiff,  ) | CR 20-2 JRT |
| ) | |
| ) | 18 U.S.C. § 1343 |
| v.  ) | |
| ) | |
| STEVEN JACOB GOLDMANN,  ) | |
| a/k/a STEVEN EIDELMAN  ) | |
| ) | |
| Defendant.  ) | |

THE UNITED STATES ATTORNEY CHARGES THAT:

**INTRODUCTION**

At times relevant to the Information:

*Victim Business 1*

1.  Victim Business 1 was a payment processing and information management business with an office in Chanhassen, Minnesota. Victim Business 1 provided vehicle fleet and other transportation management services to businesses throughout the United States and to the United States government.

2.  As part of its business, Victim Business 1 provided internet-based services to its customers, including by permitting its customers ("account holders") to open accounts that could be used to pay for fuel and other services to authorized cardholders on the account.



*United States v. Steven Jacob Goldmann*

3.      Victim Business 1 offered one type of account—a SmartFunds account—that was designed to transfer funds to individual cardholders for their use. Such accounts were often used for payroll payments and travel reimbursements. Once an account holder allocated funds to a SmartFunds cardholder, the funds were debited from the account holder's account and transferred to the cardholder as the cardholder's property.

4.      Another kind of Victim Business 1 account—a Bill on Use (BOU) account—permitted the account holder to preauthorize cardholder transactions. With a BOU account, the account holder could designate funds to cards to control how a particular cardholder could withdraw or use funds. For example, the account holder could place limits on the purpose, type, volume, and location of future purchases a cardholder could make. Unlike a SmartFunds account, the account holder was billed only at the time the cardholder completed the authorized transaction. As a result, although a BOU account holder might have authorized purchases up to the amount of funds contained in their account, their account balance would not change until the cardholders completed the pre-authorized transactions.

5.      An account holder could change account status from SmartFunds to BOU through Victim Business 1's website. A Victim Business 1 account holder could also transfer funds between different types of Victim Business 1 accounts, transfer funds from a Victim Business 1 account to an external bank account through Victim Business 1's website, and convert account funds to cash, money orders, and money codes.

*United States v. Steven Jacob Goldmann*

### *Defendant GOLDMANN and His Businesses*

6. Defendant **STEVEN JACOB GOLDMANN** resided in the District of Minnesota.

7. Among defendant **GOLDMANN**'s prior felony convictions were: larceny (2014), issuing a bad check (2014), and theft of services (2013). To conceal his true identity and criminal history from prospective business partners, **GOLDMANN** used alias "Steven Eidelman" in correspondence and at events.

8. **GOLDMANN** also purported to be acting upon the behalf of companies he owned and operated, when in fact, he was acting on his own behalf.

9. Defendant **GOLDMANN** owned and operated Coldwhere ("Coldwhere"), a company located in Bloomington, Minnesota that purported to provide technology services to the shipping industry. **GOLDMANN** had a majority equity stake in Coldwhere and its subsidiaries, held himself out as the company's chief executive officer (CEO) and founder, and was the designated signatory on its business bank accounts.

10. Defendant **GOLDMANN** owned and operated Switch Fast Communications Inc., doing business as SwitchFast Logistics, ("SwitchFast"), which purported to provide rail shipping services.

11. On or about October 20, 2017, **GOLDMANN** applied for a BOU business account with Victim Business 1 using the business name "Switch Fast Communications Inc" doing business as "Switch Fast Logistics." **GOLDMANN** represented that he was

3

*United States v. Steven Jacob Goldmann*

CEO and sole representative of SwitchFast on the account application. In the application, **GOLDMANN** also requested a line of credit on the account, but Victim Business 1 denied the request. As a result, **GOLDMANN** was required to prefund the account to complete a transaction.

12. On or about March 14, 2018, **GOLDMANN** applied for a SmartFunds business account with Victim Business 1 using the business name "Switch Fast Communications Inc" doing business as "Switch Fast Logistics." **GOLDMANN** was the sole authorized party on the account. Victim Business 1 denied **GOLDMANN's** request for a line of credit on the account. As a result, **GOLDMANN** was required to prefund the account to complete a transaction.

## COUNT 1
(Wire Fraud)

13. The allegations contained in paragraphs 1 through 12 of this Information are realleged and incorporated here.

14. Beginning no later than in and around April 2018, and continuing until in and around October 2018, in the State and District of Minnesota, the defendant,

**STEVEN JACOB GOLDMANN,
a/k/a STEVEN EIDELMAN,**

did knowingly and unlawfully devise and execute a scheme to defraud Victim Business 1, and to obtain money and property from Victim Business 1 by means of materially false and

*United States v. Steven Jacob Goldmann*

fraudulent pretenses, representations, promises, and material omissions, as described below.

15.     Defendant **GOLDMANN** devised a scheme to defraud Victim Business 1 by exploiting a coding flaw in Victim Business 1's internet customer portal. Specifically, **GOLDMANN** learned that by changing his online customer account settings to associate SmartFunds cards with his BOU account, increasing the available BOU account allocation, and then reverting his account settings back to SmartFunds status, he could make Victim Business 1's system reflect that he had made a prepayment for SmartFunds services when in fact, he had not been billed at all. As a result, **GOLDMANN** was able to falsely inflate his SmartFunds account balance by switching between types of account without adding money to his account.

16.     Instead of warning Victim Business 1 of the coding error, **GOLDMANN** exploited the error in furtherance of his scheme to defraud Victim Business 1 by depositing only approximately $40,561.62, in his account, which he was able to inflate to approximately $923,901 in Victim Business 1 SmartFunds.

17.     **GOLDMANN** then withdrew these funds from his Victim Business 1 SmartFunds account in cash, bank transfers to his personal and business accounts, money orders, and Victim Business 1 money codes, which he diverted to his own use, including to gamble and to purchase stocks, a vehicle, computers, and camera equipment. Defendant **GOLDMANN** also used these funds to pay debts he incurred on behalf of

*United States v. Steven Jacob Goldmann*

Coldwhere and SwitchFast, including debts to multiple customers who complained that **GOLDMANN** failed to provide promised services and to whom **GOLDMANN** falsely claimed to be **STEVEN EIDELMAN**.

18.     To avoid scrutiny from financial institutions, defendant **GOLDMANN** structured his withdrawals by withdrawing relatively small, irregular amounts.

19.     Through these means, from in and around April 2018 through in and around October 2018, **GOLDMANN** obtained approximately $883,339.38, in cash, money orders, direct deposits, and money codes from Victim Business 1 to which he was not entitled.

20.     For the purpose of executing and attempting to execute the above-described scheme and artifice to defraud, **GOLDMANN** used Victim Business 1's internet customer portal to transmit and cause to be transmitted writings, signs, signals, pictures, and sounds

*United States v. Steven Jacob Goldmann*

by means of wire communication in interstate and foreign commerce, including the examples set forth in the table below:

| Date (on or about) | Communication |
|---|---|
| April 21, 2018 | Defendant **GOLDMANN** changed his account status from SmartFunds to BOU. The account balance was approximately $3.33. **GOLDMANN** then allocated approximately $300 to the BOU account. |
| April 22, 2018 | Defendant **GOLDMANN** changed the BOU account status to SmartFunds, then withdrew approximately $282.50 from the account using an automatic teller machine (ATM). |
| July 18, 2018 | Defendant **GOLDMANN** changed his account status eight times, alternating between SmartFunds and BOU status. With each change to BOU status, defendant **GOLDMANN** allocated funds to his account, which he then withdrew after changing account status to SmartFunds. In total, defendant **GOLDMANN** allocated approximately $9,000 in funds to his account, of which he withdrew approximately $8,400, in a series of transactions that never exceeded $2,200. |
| October 3, 2018 | Defendant **GOLDMANN** changed his account status six times, alternating between SmartFunds and BOU status. With each change to BOU status, defendant **GOLDMANN** allocated funds to his account, which he then withdrew after changing account status to SmartFunds. In total, defendant **GOLDMANN** allocated approximately $6,800 in funds to his account and withdrew approximately $6,799.78, in a series of transactions that never exceeded $2,346. |

All in violation of Title 18, United States Code, Section 1343.

## FORFEITURE ALLEGATIONS

Count 1 of this Information is incorporated here for the purpose of alleging forfeitures pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c).

*United States v. Steven Jacob Goldmann*

As the result of the offense alleged in Count 1 of this Information, the defendant shall forfeit to the United States pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the violations of Title 18, United States Code, Section 1343.

If any property is unavailable for forfeiture, the United States intends to seek the forfeiture of substitute property as provided for in Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c).

All in violation of Title 18, United States Code, Sections 1343, 981(a)(1)(C), and Title 28, United States Code, Section 2461(c).

Dated: January 3, 2020

ERICA H. MacDONALD
United States Attorney

BY: MIRANDA E. DUGI
Attorney ID No. 5140546 (NY)
Assistant United States Attorney